UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:07-CV-1566-G |
| RODRIGO VIGIL MONTELONGO, | ) | |
| | ) | **ECF** |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the plaintiff, the United States of America ("the plaintiff" or "the government"), for summary judgment. For the reasons set forth below, the motion for summary judgment is granted.

### I. BACKGROUND

On or about June 5, 1985, the defendant, Rodrigo Vigil Montelongo ("the defendant" or "Montelongo"), became a lawful permanent resident of the United States as a result of his marriage in 1983 to Janice Renee Nichols, a United States citizen. Plaintiff's Memorandum of Points and Authorities in Support of its Motion for Partial Summary Judgment ("Motion for Summary Judgment") at 2. Montelongo

and Janice Nichols divorced sometime between June 5, 1985 and 1991. See *id.* On February 15, 1991, the defendant attempted to enter the United States. *Id.* An agent for the United States Immigration and Naturalization Services ("the INS") detained the defendant at a checkpoint near Hebbronville, Texas.[1] *Id.* at 2-3. At the time of his detention, the defendant was traveling with two companions, one of whom was his second wife, Maria Laureano Cuevas. *Id.* Cuevas did not have a visa or other permission to enter the United States. *Id.* at 3. As a result, INS agents questioned Cuevas and Montelongo. During the course of this questioning, Montelongo signed a sworn statement stating that he had entered the United States on February 13, 1991 by crossing the river, without being inspected by an Immigration Officer. *Id.* This admission prompted INS to issue an Order to Show Cause against the defendant, in which he was charged with being deportable for entering the United States without inspection. *Id.* A deportation hearing was set for April 10, 1991. *Id.*

Although the Executive Office for Immigration Review issued the defendant a notice of the hearing, Montelongo failed to appear. *Id.* at 3-4. The court conducted an *in absentia* hearing and sustained the charge of deportation. *Id.* at 4. The

---

[1] Although the Department of Homeland Security currently operates the department that was formerly known as the Immigration and Naturalization Service, that change does not affect this case, and the court will continue to refer to the agency as the INS throughout this opinion.

defendant was ordered deported to Mexico.  *Id.*  The court mailed Montelongo a copy of the order, along with a notice of appeal which advised the defendant that the decision would be final unless Montelongo filed an appeal with the Office of the Immigration Judge on or before April 23, 1991.  The defendant did not file his appeal until May 23, 1991.  The Board of Immigration Appeals ("the BIA") denied this appeal as untimely on October 16, 2002.  *Id.*

On February 21, 1995, Montelongo filed with the INS an Application for Naturalization, Form N-400.  *See* Plaintiff's Complaint to Revoke Naturalization ("Complaint") ¶ 5.  Part of the application asked the defendant whether he had ever been ordered deported.  *Id.* ¶ 7.  The defendant answered "no" and signed his application under penalty of perjury, thereby certifying that the information was true and correct.  *Id.* ¶¶ 8, 9.  On September 25, 1995, the INS approved the defendant's application for naturalization.  Motion for Summary Judgment at 5.

The government initiated this case to revoke the citizenship of the defendant on September 13, 2007, under section 340(a) of the Immigration and Nationality Act of 1952 ("the INA"), 8 U.S.C. § 1451(a), on the grounds that the defendant's citizenship was procured illegally and by willful misrepresentation of material facts. *See generally* Complaint.  The plaintiff filed this motion for summary judgment on July 11, 2008.

II.  ANALYSIS

A.  Rule 56 Standard

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).[2]  "[T]he substantive law will identify which facts are material."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986); *Wallace v. Texas Tech University*, 80 F.3d 1042, 1046-47 (5th Cir. 1996).  When, as here, the movant bears the burden of proof on a claim for which it is moving for summary judgment, the movant must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in [its] favor."  *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1194 (5th Cir. 1986)

---

[2]  The disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive."  *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir.1986).

(emphasis in original).  A plaintiff's showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the plaintiff, otherwise there is a genuine issue of fact and summary judgment cannot be granted.  See *Anderson*, 477 U.S. at 248-49.

Once the moving party has carried its burden, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial.  *Celotex*, 477 U.S. at 323-24.  While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden.  *Little v. Liquid Air Corporation*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825 (1992).  If the nonmovant's "evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50.

### B.  Plaintiff's Motion for Summary Judgment

The INA provides that citizenship shall be revoked if the United States shows that the certificate of naturalization was (1) illegally procured, or (2) "procured by concealment of a material fact or by willful misrepresentation."  8 U.S.C. § 1451(a).  The plaintiff does not rely on the concealment or willful misrepresentation prong.

Instead, it argues that Montelongo illegally procured his certificate of naturalization. Motion for Summary Judgment at 6. Naturalization is "illegally procured" within the meaning of 8 U.S.C. § 1451(a) when an individual obtains naturalization at a time when he is statutorily ineligible for it. See *Fedorenko v. United States*, 449 U.S. 490, 506 (1981) (noting that "there must be strict compliance with all the congressionally imposed prerequisites to the acquisition of citizenship" and that failure to comply with any one of "these conditions renders the certificate of citizenship 'illegally procured'"). The government contends there are two reasons why Montelongo was statutorily ineligible for naturalization at the time of his application. First, it argues Montelongo was not a citizen of the United States for at least five years prior to filing his application for naturalization. Motion for Summary Judgment at 6. Second, it argues that the INS could not lawfully approve Montelongo's application because he was subject to a final deportation order at the time he applied. *Id.* The plaintiff moves for summary judgment on these issues, both of which are outcome determinative. In other words, if the plaintiff is able to meet the summary judgment standard on either of these two points, the certificate of naturalization must be revoked and Montelongo deported. *See* 8 U.S.C. § 1451(a).

1. Failure to Meet the Residency Requirement

The plaintiff's first argument is that when Montelongo applied for citizenship, he was not, as the INA requires, a lawful permanent resident. Motion for Summary

Judgment at 6. According to 8 U.S.C. § 1427(a), which lists the requirements for naturalization, an alien -- to be eligible to become a naturalized citizen -- must have been a lawful permanent resident of the United States for at least five years prior to filing his application for naturalization.[3]

The term "lawfully admitted for permanent residence" is defined in the INA as "having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." 8 U.S.C. § 1101(a)(20). A final order of deportation changes an alien's immigration status as a lawful permanent resident. See *Rivera v. Immigration & National Service*, 810 F.2d 540, 540-41 (5th Cir. 1987) (addressing when, during deportation proceedings, "lawful domicile" ceases, thereby implying that deportation interrupts lawful domicile); *Wall v. Immigration and Naturalization Service*, 722 F.2d 1442, 1444 (9th Cir. 1984) (declining to decide whether "lawful domicile" continues pending appeal of a deportation order, but holding that once there has been a final judgment of deportability, lawful domicile terminates). Thus, the relevant question is when Montelongo's deportation order became final.

The answer can be found in 8 C.F.R. § 3.37 (1991), the regulation in place at the time of Montelongo's deportation case. This regulation provided that, unless a decision is certified to the BIA, "the decision of the Immigration Judge becomes final

---

[3] Both the 1995 and current versions of 8 U.S.C. § 1427(a) list five years of lawful residency as a prerequisite for naturalization.

upon waiver of appeal or upon expiration of the time to appeal if no appeal is taken." 8 C.F.R. § 3.37 (1991). Here, the immigration judge issued an order of deportation on April 10, 1991. Motion for Summary Judgment at 4. The time for Montelongo to file an appeal expired on April 23, 1991. 8 C.F.R. § 3.36 (1991) (providing that the decision of the Immigration Judge becomes final upon expiration of the ten-day time period to file a notice of appeal to the BIA after service of the Immigration Judge's decision; the time to appeal is extended to 13 days if the decision is served by mail). Thus, when Montelongo failed to file an appeal by April 23, 1991, the order of deportation became administratively final. Even if Montelongo had been residing in the United States as a lawful permanent resident prior to this date, this final deportation order interrupted that status. *Rivera*, 810 F.2d at 542.

There is no issue of fact as to whether this deportation order was issued, or as to when it became final. Montelongo does not contend otherwise. The only argument Montelongo makes is an argument of law that the deportation order was not administratively final until October 16, 2002, when the appeal was finally denied as untimely. Defendant's Brief in Response to Plaintiff's Motion for Partial Summary Judgment ("Response") at 5. Montelongo admits that he had only thirteen days to appeal the deportation order and that he failed to do so, but he also argues that this failure did not take away the BIA's jurisdiction to hear the appeal. *Id.* at 3-4. He points to a recent Supreme Court case that draws a distinction between rules that are

mandatory and rules that are jurisdictional. *Id.* at 5 (citing *Eberhart v. United States*, 546 U.S. 12 (2005)).  Montelongo's analysis of *Eberhart* leads him to conclude that 8 C.F.R. § 3.36 (the rule providing the 13-day time limit) is not a jurisdictional rule, but a mandatory rule that is forfeited when not properly invoked.  As a result, he argues, the BIA had jurisdiction over his appeal until it was dismissed as untimely on October 16, 2002.  He argues that this is the date on which the deportation order became administratively final.

Montelongo's support for this contention comes from *Huerta v. Gonzales*, a Tenth Circuit case.  *Huerta*, 443 F.3d 753 (10th Cir. 2006).  In *Huerta*, petitioner Huerta filed an appeal with the BIA that was one day too late.  *Id.* at 755.  The government, however, did not object to the untimeliness of the appeal.  *Id.*  As a result, the BIA overlooked the late filing and addressed the case on the merits. Huerta later appealed the case to the Tenth Circuit.  Before addressing Huerta's case on the merits, the court first examined whether Huerta's original untimely appeal to the BIA was "a jurisdictional defect that prevents us from addressing the merits and renders all action subsequent to the untimely filing a nullity." *Id.* at 755.  The court determined that the answer hinged on whether 8 C.F.R. § 1003.38(b), the rule providing the time limit for Huerta's appeal, was a jurisdictional, or a mandatory but forfeitable, rule.  *Id.*  The court held it was the latter.

In reaching this conclusion, the court turned to the *Eberhart* case from the Supreme Court, 546 U.S. 12. *Eberhart's* facts are similar to *Huerta's*. In *Eberhart*, the defendant was convicted on drug charges. *Id.* at 13. He moved for a judgment of acquittal or new trial under Federal Rule of Criminal Procedure 33, but the motion was not filed within the time limit prescribed by Rule 33. The government, however, did not object to the motion's tardiness. *Id.* at 13-14. It was not until the decision of the district court was appealed that the government raised the timeliness issue. *Id.* at 14. The court of appeals held that the untimeliness deprived the district court of jurisdiction to hear the motion for acquittal or new trial. *Id.* The Supreme Court reversed, however, and held that the deadline in Rule 33 was not jurisdictional but mandatory. *Id.* at 19. That is, the rule was mandatory when properly invoked, but otherwise forfeited. *Id.* at 17. This holding relied on an earlier case, *Kontrick v. Ryan*, 540 U.S. 443, 456 (2004). There, the court held that the time limits in the Federal Rules of Bankruptcy Procedure were "claim-processing" rules rather than jurisdictional rules. *Kontrick*, 540 U.S. at 458-60. The Court reasoned that the Federal Rules of Criminal Procedure "closely parallel" the Federal Rules of Bankruptcy Procedure, and were similarly claim-processing rules, enforced only when invoked. *Eberhart*, 546 U.S. at 16. In *Huerta*, the Tenth Circuit concluded that 8 C.F.R. § 1003.38 (the modern analog of 8 U.S.C. § 3.36, which required Montelongo to appeal to the BIA within 13 days), was similarly a mandatory rule, and not a

jurisdictional one.  *Huerta*, 443 F.3d at 756-57.  As a result, the court held it had jurisdiction to hear the appeal on the merits.  *Id.* at 757.

Montelongo maintains that *Huerta's* holding, when applied to this situation, dictates that the BIA had jurisdiction to hear his appeal despite its untimeliness.  Response at 5.  As a result, he argues, it was not until October 16, 2002, when the appeal was finally dismissed as untimely, that the deportation order became administratively final.  *Id.*  This argument is flawed.  First and foremost, it contradicts the plain meaning of the regulation in place at the time Montelongo failed to timely appeal the deportation order.  According to 8 C.F.R. § 3.37, the deportation order became administratively final "upon waiver of appeal or upon expiration of the time to appeal if no appeal is taken."  The plain meaning of this language is that the deportation order became administratively final on the day Montelongo failed to file a timely appeal, *viz.*, April 23, 1991.

Second, Montelongo's reliance on *Huerta* is misplaced.  To begin with, *Huerta* is not binding on this court.  Even if it were, however, there is an important distinction between this case and *Huerta*.  When Huerta appealed his case, the government's response did not address the issue of untimeliness.  *Huerta*, 443 F.3d at 755.  The United States therefore forfeited that objection.[4]  Here, the government

---

[4] By stating that the United States forfeited this objection, the court assumes, without deciding, that *Huerta* was correct in determining that 8 C.F.R. § 1003.38(a) is a forfeitable rule, rather than a jurisdictional one.

never forfeited its timeliness argument. The BIA did not address Montelongo's appeal on the merits in 2002; it refused to do so because it found the appeal was untimely. All *Huerta* holds is that the BIA has jurisdiction to hear an untimely appeal when the timeliness objection has been waived. *Id.* at 756-57. The government did not waive that objection here. *Huerta* is thus distinguishable and would not control the outcome of this case, even if it were binding on this court.

In short, Montelongo stated in 1995 that the basis of his eligibility for citizenship was his status as a permanent resident in the United States for at least 5 years. Appendix to Memorandum of Points and Authorities in Support of Plaintiff's Motion for Partial Summary Judgment ("Appendix") at 16. According to 8 C.F.R. § 3.37, his deportation order became final on April 23, 1991. Even if he had been residing in the United States as a lawful permanent resident until that time, his status as a lawful resident alien ceased to exist on April 23, 1991. The defendant filed for naturalization on February 17, 1995. Appendix at 19. Thus, he had not been living as a permanent resident in the United States for five years when he filled out the application. Under *Fedorenko*, procurement of naturalization at a time when the applicant does not meet the requirements is illegal and grounds for revocation under 8 U.S.C. § 1451(a). *Fedorenko*, 449 U.S. at 506. There is no genuine issue of material fact on this ground. The plaintiff's motion for summary judgment on this ground is granted.

## 2. INS Could Not Approve Montelongo's Application for Naturalization Due to His Final Order of Deportation

The plaintiff's second argument is that Montelongo illegally procured his naturalization because the INS could not lawfully approve his application for naturalization since he was subject to an administratively final order of deportation. Motion for Summary Judgment at 6. At the time Montelongo applied for naturalization, 8 U.S.C. § 1429 provided that "no person shall be naturalized against whom there is outstanding a final finding of deportability pursuant to a warrant of arrest . . . and no application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceeding pursuant to a warrant of arrest." The Order to Show Cause issued on February 15, 1991 is equivalent, for purposes of 8 U.S.C. § 1429, to a warrant for arrest. 8 C.F.R. § 318.1 (1995) ("For the purposes of section 318 of the Act, a notice to appear issued under 8 CFR part 239 (including a charging document issued to commence proceedings under sections 236 or 242 of the Act prior to April 1, 1997) shall be regarded as a warrant of arrest."). Thus, even if there were no final order of deportability, there were deportation proceedings pending against Montelongo pursuant to the Order to Show Cause. As a result, even without this court's holding that the deportation order became final on April 23, 1991, Montelongo was ineligible for naturalization. Moreover, as discussed above, the deportation order issued against Montelongo *did* become administratively final on April 23, 1991. Under *Fedorenko*, an alien procures

his naturalization illegally if he is unqualified for naturalization at the time of procurement. 449 U.S. at 506. Under 8 U.S.C. § 1451(a), illegally procured naturalization certificates must be revoked.

Montelongo does not disagree with the above analysis based on any issues of fact. The only counter-argument Montelongo makes is that there was no administratively final deportation order until October 16, 2002. The court has already rejected this argument. Having disposed of this argument of law and finding no genuine issues of material fact, the court concludes that the plaintiff's motion for summary judgment must be granted on this ground as well.

### III. CONCLUSION

For the reasons discussed above, the plaintiff's motion for summary judgment pursuant to Rule 56 is **GRANTED**. Judgement will be entered in favor of the plaintiff.

Within ten days of this date, counsel for the plaintiff shall submit a proposed form of judgment in conformity with this memorandum opinion and order.

**SO ORDERED**.

October 23, 2008.

*[signature: A. Joe Fish]*

**A. JOE FISH**
**Senior United States District Judge**